UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEREMY CLARKE,<br><br>        Plaintiff,<br><br>        v.<br><br>WHITE PINE CHARTER SCHOOL, INC., a political subdivision of the State of Idaho; EMMALEE ROBINSON, in her individual and official capacity; JONI LARSEN, in her individual and official capacity; JIM SEAMANS, in his individual and official capacity; MARK DUNCAANSON, in his individual and official capacity; DEE ARMSTRONG, in his individual and official capacity; and JOANNA STARK, in her individual and official capacity.<br><br>        Defendants. | Case No. 4:20-cv-00214-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

This action involves claims brought by Plaintiff, Jeremy Clarke, against

Defendants White Pine Charter School (WPCS) and members of WPCS's Board of

Trustees, related to Clarke's previous employment with, and ultimate termination

from, WPCS. Before the Court are the motion to compel filed by Clarke (Dkt. 18),

and the motion for a protective order filed by Defendants (Dkt. 17). For the reasons

set forth below, the Court will grant Clarke's motion to compel and deny

Defendant's motion for protective order.

## BACKGROUND

The Complaint (Dkt. 1) alleges the following facts, which the Court will assume are true for purposes of addressing the pending motions:

Clarke worked for WPCS from 2012 to 2020, initially as the Principal, then as CEO/Administrator, and finally as Executive Director. During his tenure he helped expand the school, obtain federal grants to support expansion, and oversaw the opening of WPCS's STEM Academy. Overall, his performance received favorable reviews by the WPCS Board. *Id.*

Prior to a regularly scheduled December 2, 2019, Board meeting, Clarke requested that the Board include on the agenda for that meeting the topic of an evaluation of his performance. Clarke made the request based on a previous suggestion by the Board. He understood that the purpose of including this agenda item was for the Board to discuss and approve the Board's prior promises to Clarke of a bonus and pay raise, and to consider amending his contract for a longer term. As a result of Clarke's request, the Board included his evaluation as an executive session topic on its December 2, 2019, Board meeting agenda, and referenced Idaho Code § 74-206(1)(b) in connection with that evaluation.

The Board meeting was held, as scheduled, on December 2, 2019. After

concluding the executive session and in an open session, the Board approved for Clarke a bonus, a raise in salary, an elevated title, and an extension of his contract, from the then current one-year contract term to a three-year contract term. Also at this meeting, three new, incoming Board members were sworn into office.[1] As a result, both the exiting Board members and the new, incoming Board members were present at this meeting.

One of the new Board members, Defendant EmmaLee Robinson, became Chair of the Board following this December 2, 2019, meeting. Robinson knew personal details about Clarke's disability and treatment he had needed in the past for this disability. Moreover, shortly after Robinson became a Board member, she told Clarke, "You aren't going to like it when I'm in there." Clarke felt that this statement was a threat but tried his best to work with Robinson and the other new Board members, just as he had done with previous Board members.

In early January 2020, Clarke began experiencing issues with his disability. He had been working long hours, was under significant stress to get the WPCS STEM Academy up and running, and was dealing with changes in, and contentions within, the Board. The stress was beginning to exacerbate his condition.

---

[1]The new, incoming Board members—Defendants Robinson, Duncanson, and Seamans—were elected in November 2019.

**MEMORANDUM DECISION AND ORDER - 3**

On January 10, 2020, the Board attended a training related to open meeting laws and other board-governance issues. Shortly after that, in mid-January 2020, Robinson called Clarke and asked him to explain where all of WPCS's money is kept. Clarke found this to be an odd question since the Board worked directly with the WPCS Business Manager to manage WPCS's finances, and also because WPCS's financial transactions are posted on the school's website so that information about the use of funds was available to the public. Clarke told Robinson his understanding of where monies were kept but asked Robinson to contact the Business Manager who had knowledge of the finances and would have more detailed information to answer Robinson's questions.

On January 22, 2020, the Board held a regular meeting and asked questions of the Business Manager regarding expenditures and fiscal management. The Business Manager had previously resigned due to concerns about working with Robinson and the new Board but attended the meeting to answer the Board's questions. The Board stated during the open meeting that it had decided to fire the Business Manager, claiming that he had mismanaged WPCSs' funds. The Board also made other disparaging comments about the Business Manager during this meeting. The way in which the Board members, and particularly Robinson, treated the Business Manager made Robinson feel increasingly concerned and threatened.

MEMORANDUM DECISION AND ORDER - 4

During a January 28, 2020, meeting the Board discussed with Clarke his knowledge of alleged mismanagement by the Business Manager. Clarke explained that he had learned about the alleged mismanagement at the same time the Board did. The Board acknowledged that Clarke was not responsible for this alleged financial mismanagement by the Business Manager.

Shortly after this meeting, Robinson began calling Clarke on an almost daily basis expressing anger toward the Business Manager and stating that the Business Manager should be in handcuffs. About this same time, Robinson also began making unreasonable demands and imposing unreasonable deadlines on Clarke. Robinson also began questioning Clarke's actions, including actions that had been directed by, or approved and signed off by, the Board.

On February 10, 2020, Robinson called Clarke and told him that the Board had violated open meeting law at the December 2, 2019, meeting when it approved the amendment of his contract to a 3-year term. She took the position that this violation was the result of the Board incorrectly citing to the wrong subsection of Idaho Code § 74-206(1). Clarke suspected that Robinson was looking for a way to void the contract extending his employment to June 2023.

On February 12, 2020, the Board held a meeting. At this meeting, the Board asserted that it had violated open meeting law at the December 2, 2019, meeting in

relation to the approval of Clarke's extended contract because the Board should have cited to § 74-206(1)(a), and not § 74-206(1)(b), on the meeting agenda. The Board further declared that, as a result, Clarke's extended contract was null and void, and that, instead, Clark's previous contract for employment (covering June 2019 to June 2020) governed Clarke's employment.

Throughout January and February, Clarke's disability worsened. This led to his health care provider placing him on FMLA leave on February 20, 2020.

On February 21, 2020, the Board held another meeting. Despite being on FMLA leave, and not being in any condition to attend the meeting, Clarke went ahead and attended. He did so because, even though he had not received notice of any alleged misconduct, it appeared that the Board intended to discuss allegations against him at the meeting. At the end of the meeting, the Board placed Clarke on paid administrative leave.

On April 1, 2020 the Board notified Clarke, without any prior warning or notice, that they had terminated his employment on March 31, 2020. This termination cut off Clarke's medical insurance, his ability to obtain continued treatment for his disability, and his ability to cover necessary care for his family members. In the termination letter, Clarke was finally provided with notice of the allegations against him, which Clarke maintains are false.

Clarke filed the present action on May 7, 2020, alleging (1) breach of contract, (2) violation of the Idaho Wage Claim Act, (3) wrongful termination in violation of Idaho Law, (4) violation of procedural due process and promissory estoppel, (5) violation of the Americans with Disabilities Act and the Idaho Human Rights Act, (6) retaliation, (7) violation of the Family Medical Leave Act, and (8) defamation.

Currently pending before the Court is Clarke's motion to compel discovery, and Defendants' motion for protective order.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the scope and limits of discovery. It provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The purpose of discovery is "to prevent surprise, prejudice and perjury during trial." *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir.

2008)(citation, internal quotation marks, and ellipses omitted). Thus liberal

discovery is allowed, and relevance, for purposes of discovery, is to be construed

broadly "to encompass any matter that bears on, or that reasonably could lead to

other matter that could bear on, any issue that is or may be in the case."

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted);

*see Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) ("Liberal discovery is

provided for the sole purpose of assisting in the preparation and trial, or the

settlement, of litigated disputes."). On the other hand, liberal discovery does not

mean unlimited discovery. *See Oppenheimer*, 437 U.S. at 351-52.

## ANALYSIS

Three different categories of discovery are at issue in the motion to compel

and motion for protective order: (a) emails regarding Clarke from March 2018 to

present; (b) a complaint filed with the Professional Standards Commission of the

Idaho Board of Education; and (c) information about when the Board learned about

the alleged open meeting violation.

### A.    Emails from January 2018 to December 1, 2019

In Request for Production No. 20, Clarke requested "all correspondence

regarding to or related to Plaintiff, including but not limited to emails and text

messages from January 2018 to present." (Dkt. 18-3 at 9.) Clarke contends that,

despite repeated meet and confers, follow-ups, extensions of time, and informal discovery dispute mediation, Defendants have not provided the responsive emails. Clarke therefore moves for an order compelling Defendants to provide all emails responsive to RFP No. 20.

Defendants oppose the motion to compel production of the emails, contending that the discovery requested is not relevant and not proportional to the needs of the case. The Court disagrees and finds the requested emails are both proportional and relevant to the case. The Court will therefore grant the motion to compel and deny Defendants' motion for a protective order in relation to this discovery.

### 1.  Relevancy

Defendants apparently concede that the emails that relate to Plaintiff for the period of December 2, 2019, through March 2020 are relevant. Defendants argue, however, that discovery from prior to December 2, 2019, is not relevant and is outside the scope of discovery, and that emails after Plaintiffs' March 31, 2020, termination are not relevant. The Court disagrees.

Clarke's employment began in 2012. Until, and including, December 2, 2019, he was continually advanced and received positive evaluations and praise of his performance. At the December 2, 2019, Board meeting, he again received a

positive review of his performance and was given an extended contract that extended his employment contract by approximately two additional years. Also at the December 2019 Board meeting, new Board members were sworn in.

After the December 2, 2019, meeting (and the swearing in of new Board members and the new Board president), things suddenly went sideways for Clarke. Over the next few months, Clarke's performance was being questioned, criticized, and negatively evaluated. Financial issues and other problems were being attributed to Clarke, and he was accused of wrongdoing, and Clarke contends all of the allegations against him were false. By early February 2020, he was told that his contract approved at the December 2, 2019, meeting was null and void. He took leave under the FMLA shortly after that and the next day he was placed on administrative leave by the Board despite already being on FMLA leave. And on March 31, 2020, his employment was terminated.

The emails from January 2018 to the present that relate to Clarke are clearly relevant and proportional to the needs of this case. These emails may reveal or relate to Clarke's past job performance and the Board's understanding and evaluation of that performance; Clarke's prior practices regarding the handling of financial issues and the Board's awareness of those practices; and the Board's discussions of Clarke, bonuses, and the extension of his contract. These issues

directly relate to Clarke's claims, the allegations in the Complaint, and the justifications put forward by the Board in terminating him.

### 2. Proportionality

Defendants contend that when they attempted to comply with this request for emails regarding Clarke, they found 42,000 responsive emails. After Defendants informed Clarke's counsel of the number of responsive emails, Clarke's counsel responded by narrowing the scope of the request. Specifically, Clarkes' counsel sent Defendants specific search terms to use in retrieving the emails, but those search terms were to be used only for the period *prior to* December 2019, i.e., from January 2018 to December 2019. Defendants agreed to produce the emails based on those parameters.[2]

Defendants represent that they have reviewed 4,449 pages of responsive emails regarding Plaintiff, but that this only covers the period December 2, 2019,[3]

---

[2] In reviewing the motion to compel, the Court notes that there are two different time periods at issue: (1) the period of January 2018 to December 2019, and (2) the period of December 1, 2019, to present. It is the Court's understanding that, to date, Defendants have not produced *any* emails for either of these time periods. It is also the Court's understanding that the search terms to limit the scope applies only to emails for the period January 2018 to December 2019, and not to the emails for the period December 1, 2019, to present.

[3] It is unclear why Defendants have used the date of December 2, 2019, rather than December 1, 2019, as Clarke's counsel made it clear that the use of the search terms to limit the scope of responsive emails was to be applied only to emails for the period *prior to* December 2019. (*See* Dkt. 18-5 at 14.)

to March 31, 2020, and that extensive review and redaction of the emails is required prior to production in order for Defendants to comply with their obligation under federal law regarding privacy of educational records. Thus, based on Defendants' representations, they *have not yet produced any* responsive emails; they *have reviewed but have not produced* emails regarding Clarke for the period December 2, 2019, to March 31, 2020 (and that these need to be redacted before being produced);[4] and they apparently *have not even obtained*, let alone reviewed or produced, any emails regarding Clarke for the period of January 2018 to December 2, 2019.

Defendants now assert that the requested discovery is overly burdensome and not proportional to the needs of the case because they have spent over 160 hours in producing this ESI. However, at no point prior to the present discovery motions did Defendants raise the issue of time expended in producing the emails as an issue. This issue was not previously raised despite multiple meet and confers over a long period of time between Defendants' counsel and Clarke's counsel; despite Defendants' counsel's agreement with Clarke's counsel to produce the

---

[4] Defendants state that it will take an estimated 20 additional hours to finish reviewing and redacting these responsive emails but it appears that this estimated 20 hours relates only to the emails that have already been reviewed, i.e., emails from December 2, 2019, through March 2020.

emails; and despite an informal discovery dispute mediation with Court staff during which the production of these emails was discussed. Defendants have also failed to provide an adequate explanation as to why their discovery response has required so much time.

Under the circumstances, the Court does not find that producing the emails will result in an undue burden or expense on Defendants. Instead, the Court finds that the production of the emails is proportional to the needs of the case, and that Defendants have not otherwise met their heavy burden of demonstrating that they should not be required to produce these emails. Accordingly, the Court will order Defendants to produce, within 30 days, all emails responsive to Plaintiff's RFP No. 20. Defendants may use the previously specified search terms to limit the scope of responsive emails only as to those emails for the period *prior to* December 2019.

### B.    Idaho Professional Standards Commission Complaint

Clarke filed this action against WPCS and its Board members on May 7, 2020. On May 15, 2020, just over a week later, the Board "filed"[5] a complaint with the Idaho Professional Standards Commission (IPSC).

---

[5] Clarke received notice from the IPSC in late July that a complaint was "filed" on May 15, 2020. Ultimately, the IPSC dismissed the complaint for lack of probable cause.

In Request for Production No. 23, Clarke requested "a copy of any information regarding Plaintiff . . . submitted to any agency or governmental organization, including but not limited to the Idaho Department of Labor, the Idaho Professional Standards Commission, the Equal Employment Opportunity Commission, the Idaho Human Rights Commission, or any law enforcement agency." (Dkt. 18-3 at 10.) In the motion to compel, Clarke seeks an order compelling Defendants to obtain and/or provide a copy of the complaint filed with the IPSC along with any associated information.

Defendants do not deny that they have failed to produce the IPSC complaint. And, as Clarke points out, Defendants' stated reason for such failure has shifted over time. At first, Defendants claimed that the IPSC complaint was confidential. Nearly a year later, during a June 25, 2021, discovery dispute mediation with Court staff, Defendants agreed to produce the IPSC complaint with some redactions. Almost a month later, on July 21, 2021, Defendants asserted for the first time that they did not have a copy of the IPSC complaint but would attempt to get a copy from the IPSC along with any information regarding when it was received by the IPSC. (*See* Dkt. No. 18-5 at 27 (July 21, 2021, email from Defendants' counsel stating: "With regard to a copy of the complaint to the Professional Standards Commission, apparently the complaint was sent by mail and no copy was sent. My

client is attempting to obtain a copy from the Commission and any information regarding when it was received.") As of August 6, 2021, Defendants had still failed to provided Plaintiff with a copy of the IPSC complaint.[6]

Defendants object to the motion to compel production of the IPSC complaint and move for a protective order. Defendants argue that the IPSC complaint is not relevant to any claims brought in this case and it is thus outside the scope of discovery. The Court disagrees and finds that the IPSC complaint is relevant to the underlying issues in this case and to potential claims for retaliation and defamation.

Complaints to the IPSC must be made within ten days of termination if the employee is terminated for reasons that could constitute grounds for revocation, suspension, or denial of a certificate. Idaho Code § 33-1208A. Clarke was terminated on March 31, 2020, and thus a complaint with the IPSC needed to be filed by April 10, 2020. It was not. Instead, WPCS did not file the IPSC Complaint until May 15, 2020, which is *after* this action was filed against WPCS and its Board members, and after these Defendants had been served.

This timeline raises issues about the underlying motivation for the filing of

---

[6] Defendants apparently requested a copy of the IPSC complaint by filing a public records request with the IPSC on August 17, 2021, which was only after Clarke filed the motion to compel.

the IPSC complaint. Discovery regarding the IPSC complaint, and when WPCS and its representatives made contact with IPSC, may thus shed light on the motivation and circumstances surrounding Clarke's termination. This discovery is therefore potentially relevant to the claims Clarke has raised against Defendants in the present action. The IPSC complaint is also relevant to potential claims for retaliation and defamation.

Clarke has admitted in his reply brief that he has now obtained a copy of the IPSC complaint, but not from Defendants. Instead, in September 2021, due to Defendants' ongoing failure to produce a copy of the IPSC complaint, Clarke's counsel served a subpoena on the IPSC for a copy and received a response in October. However, according to Clarke, that response does not show any correspondence between Defendants and the IPSC in relation to the complaint, and thus Clarke still needs Defendants to fully comply with RFP No. 23.

The Court finds that Clarke is entitled to discovery regarding the date on which WPCS and its representatives made contact with the IPSC, the contents of all communications, reports/complaints (including the IPSC complaint), and any additional documentation WPCS provided the IPSC regarding Clarke. The Court will therefore grant the motion to compel and order Defendants to provide this discovery, and all other discovery responsive to RFP No. 23 that is in Defendants'

possession, custody, or control. Defendants' motion for protective order in relation to this discovery will be denied.[7]

### C.    Alleged Open Meeting Violation

On February 10, 2020, Board Chair Robinson called Clarke and told him that the Board had violated open meeting law when it approved the amendment of his contract to a three-year term and that the violation was due to the Board citing the wrong subsection of Idaho Code § 74-206(1) on the agenda for the December 2, 2019, meeting.[8] Two days later, at the February 12, 2020, Board meeting, the Board publicly asserted this same thing—that the Board had violated open meeting law at the December 2, 2019, meeting in relation to Clarke's contract by citing to the wrong subsection of § 74-206(1), and that, as a result, the extension of Clarke's contract approved at the December 2, 2019, meeting was null and void.

Defendants have maintained that position in defending the present action—

---

[7] Defendants assert that they did not keep a copy of the IPSC complaint and argue that they cannot be compelled to produce something that they do not have. Defendants are correct that are only required to produce discovery that is in their possession, custody, or control. However, Defendants also have a duty to preserve evidence. Their argument that they did not keep a copy of the IPSC complaint raises issues spoliation. The Court will accordingly grant Clarke leave to file a motion regarding spoliation in relation to the IPSC complaint.

[8] Robinson claimed that the violation occurred because the Board cited to subsection (1)(b) of I.C. § 74-206 on the meeting agenda and should have instead cited to subsection (1)(a). Subsection (1)(a) relates to the hiring of a public officer, employee, staff member, or individual agent. In contrast, subsection (1)(b) relates to the evaluation, dismissal or disciplining of, or to hear complaints or charges against, a public officer, employee, staff member, or individual agent.

that the Board's approval of the extension of Clarke's contract is null and void because there was an open meeting violation in relation to that approval at the December 2, 2019, meeting. Clarke has taken the position no open meeting violation occurred at the December 2, 2019, meeting. Clarke has further taken the position that, even assuming there was an open meeting violation, the Board took too long to "cure" that violation after it became aware of it.

In support of his position that the Board took too long to cure any purported open meetings violation, Clarke seeks any notes or correspondence related to legal advice or opinions provided to Defendants that there was an open meeting violation at the December 2, 2019, meeting.

To date, Defendants have produced one heavily redacted invoice from Yorgason Law Offices, Defendants' previous counsel, that states: "2/12/2020 Research re [redaction] open meeting violations; TC [redaction] E. Robinson re same." Clarke contends that this response is insufficient and seeks to have the Court compel Defendants to produce any notes or emails related to the legal advice or opinions received by the Board that there was an open meeting violation at the December 2, 2019, meeting.

Defendants oppose the motion to compel production of this information and seek a protective order in relation thereto. They take the position that the

information Clarke seeks was not requested in any discovery request, is not relevant, and is privileged. They further take the position that they have provided all responsive information in their possession.

### 1.  Whether the information was requested

In Request for Production No. 27, Clarke requests "any correspondence, documents, notes, or other records that WPCS claims demonstrate its failure to comply with the open meeting laws which allegedly precipitated actions to make Plaintiff's contract null and void." Defendants contend that notes or emails related to legal opinions or advice that an open meeting violation had occurred does not fall within this request. The Court disagrees and finds that because Defendants' former counsel stated that the Board relied on legal advice in determining that an open meeting violation occurred,[9] the notes and emails related to that legal advice falls within the request. Further, to the extent Defendants believed RFP No. 27 was unclear, during meet and confer correspondence in January 2021, Clarke's counsel

---

[9] In a February 27, 2020, email, Defendants' prior counsel—Chris Yorgason—informed Clarke's counsel that the Board's belief that there had been an open meeting violation at the December 2, 2019, meeting was based upon legal opinions from three attorneys. Specifically, Defendants' prior counsel stated: "I realize there may be some disagreement regarding whether an open meeting violation occurred when [Clarke's] contract was purportedly extended, but the school has legal opinions from three attorneys that an open meeting violation did occur and, under Idaho law, any action taken as part of the open meeting violation is void." (Dkt. 18-10 at 4-5.)

explicitly stated that the request included "[a]ny notes or emails related to" the advice from legal counsel upon which the Board relied.

### 2.  The information is relevant

The Court also finds the information regarding the legal opinions or advice to be relevant to the timing of the Boards' receipt of notice of the claimed open meeting violation.

The parties dispute whether an open meeting violation occurred at the December 2, 2019, meeting. For purposes of this dispute, the Court will assume that an open meeting violation occurred and will instead focus on the Board's attempt to "cure" the alleged violation by declaring Clarke's extended contract null and void.

Under Idaho law, a violation of open meeting law can be cured through two different pathways: (i) the agency's self-recognition of a violation, or (ii) a third party's written notice to the agency of an alleged violation.[10] I.C. § 74-208(7)(a)(i), (ii). Under either pathway, there is a time limit imposed for curing the violation. Specifically, following the agency's "acknowledgement of a violation" under

---

[10] Section 74-208(7)(a) provides that "[a] violation may be cured by a public agency upon: (i) The agency's self-recognition of a violation; or (ii) Receipt by the secretary or clerk of the public agency of written notice of an alleged violation. . . ." I.C. § 74-208(7)(a)(i), (ii).

either of the pathways, the agency has 14 days "to cure the violation by declaring that all actions taken at or resulting from the meeting in violation of this act void." I.C. § 74-208(7)(b).[11]

Here, Defendants sought to cure the alleged violation through the self-recognition pathway. Thus, the Board had 14 days after "acknowledgement" of the alleged open meeting violation within which "to cure the violation by declaring" the approval of Clarke's extended contract void. The statute does not, however, define the term "acknowledgment" and thus what triggers the 14-day cure deadline.

Defendants argue that "acknowledgment" of a self-recognized violation does not occur until the agency publicly acknowledges that violation, which they contend did not occur in the present case until the February 12, 2020, Board meeting. The Court disagrees and finds Defendants' interpretation of subsection (7)(b) to be untenable.

Specifically, under Defendants' interpretation, there would be no time limit

---

[11] Section 74-208(7)(b) provides: "Following the public agency's acknowledgment of a violation pursuant to paragraph (a)(i) or (a)(ii) of this subsection, the public agency shall have fourteen (14) days to cure the violation by declaring that all actions taken at or resulting from the meeting in violation of this act void."

between when an agency self-recognizes a violation and when the agency is required to cure a violation. This would mean that an agency could wait to "cure" an open meeting violation that it has self-recognized for months after that self-recognition as long as the agency did not publicly "acknowledge" that violation more than 14 days prior to curing it. Such an interpretation would allow an agency to merely lay in wait after self-recognizing a violation until and unless an opportune time arises to publicly "acknowledge" that violation. This would be antithetical to and inconsistent with the intent of Idaho's open meeting law, "that the formation of public policy is public business and shall not be conducted in secret," I.C. § 74-201, and the spirit of that law, which is "designed to allow the public to be present during agency hearings," *Noble v. Kootenai Cty. ex rel. Kootenai Cty. Bd. of Comm'rs*, 231 P.3d 1034, 1040 (Idaho 2010).

The Court finds interpreting "acknowledgement" of a violation under § 74-208(7)(b) as occurring at the time an agency self-recognizes a violation is not only consistent with the language of the statute but also consistent with the purpose, intent, and spirit of the open meeting law. Thus, the Court finds that an agency has 14 days from self-recognition of an open meeting violation within which to "cure" the violation. Turning to the present case, this means that the timing of when the Board received legal advice or opinions regarding whether an open meeting

MEMORANDUM DECISION AND ORDER - 22

violation occurred at the December 2, 2019, meeting is relevant to whether the Board's attempt to "cure" the alleged violation was timely.

Defendants argue, alternatively, that even if there was a deadline by which WPCS was required to acknowledge and cure the purported open meetings violation, and WPCS missed that deadline, Clarke is barred from bringing his claim here because he was required to bring the claim in state court and had to do so within 180 days of the alleged violation. Defendants' argument is entirely without merit and is specious.

The authority upon which Defendants rely in making this argument—Idaho Code § 74-208(6)—deals with claims brought against an agency for *violations* of the open meeting law and imposes certain requirements on such claims. Here, Clarke is not bringing a claim for violation of the open meeting law. To the contrary, he adamantly denies that there was any violation. The fact that Defendants are seeking to raise the open meeting law as a defense to shield themselves from liability does not somehow transform this action into a claim for an open meeting violation.

In sum, the timing of when any of the Board members[12] learned about, recognized, or received legal advice or opinions regarding whether an open meeting violation may have occurred at the December 2, 2019, meeting is relevant to whether Defendants' attempt to "cure" the purported violation was timely.

### 3. The privilege has been waived

Defendants argue, and the Court agrees, that the information sought by Clarke—the "notes or emails related to" the legal advice or opinions received by Defendants regarding the alleged open meeting violation—are privileged. However, the question here is not whether the information is privileged but instead whether Defendants waived this privilege.

As discussed extensively above, Defendants have taken the position that an open meeting violation occurred at the December 2, 2019, meeting and that, as a result, they were entitled to "cure" that violation by declaring Clarke's contract null and void. Defendants have also cited to the advice or opinions of three different attorneys as the reason for believing that an open meeting violation occurred.

---

[12] The Court rejects Defendants' attempt to limit discovery to when the Board chair, as opposed to other Board members, learned about, recognized, or received legal advice regarding whether an open meeting violation occurred at the December 2, 2019, meeting

The Court recognizes that Defendants are not using the advice of counsel as a direct defense or a direct "shield" to liability for the breach of contract claim. However, they are relying on the defense, and thus using as a "shield" to liability, that an open meeting violation occurred and that, as a result they were entitled to void Clarke's extended contract. And, Defendants have asserted that their belief that an open meeting law violation occurred is based on legal advice or opinions received. Further, as discussed above, if an open meeting violation occurred, the timing of when a member of the Board received notice of that violation impacts whether the Board's attempt to "cure" the violation was timely and thus valid.

Thus the timing of Defendants' knowledge—which may be revealed through the timing of the receipt of the legal advice or opinions—is key to whether Defendants' attempt to "cure" the alleged open meeting violation is valid. Under these circumstances, "fairness requires disclosure of the protected communication" and the privilege is implicitly waived." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield. Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." (citation omitted).)

Further, "it would be patently unfair for [Defendants] to assert that they

relied upon [open meeting law violation], yet deprive [Clarke] of the opportunity to understand" when Defendants knew of the alleged violation, including when they received legal advice or opinions regarding the alleged violation. *In re Fresh Process Potatoes Antitrust Litigation*, Case No. 4:10-md-2186- BLW-CWD, 2014 WL 1413676 at *6 (D. Idaho Apr. 11, 2014) ("It would be patently unfair for a party to assert that they relied upon the advice of counsel, yet deprive the opponent of the opportunity to understand why the advice was given, what other alternatives were looked at, why certain advice was rejected, and how the advice was interrelated to other business decisions.").

Under these circumstances, the Court finds that Defendants have waived their attorney-client privilege for the limited purpose of the advice, opinions, or other information received, including the timing of that receipt, relating to whether there was an open meeting violation at the December 2, 2019, meeting; and further, that this waiver applies only to advice, opinion, or other information received during the period December 2, 2019, through February 12, 2020.

The Court will therefore grant the motion to compel to the extent it seeks discovery of all communications and documents, including notes, legal opinions or advice, bills for associated legal fees, text messages, and any other documentation or communications, that occurred, or were generated, made, or received during, the

**MEMORANDUM DECISION AND ORDER - 26**

period of December 2, 2019, to February 12, 2020, discussing, referring to, or otherwise relating to an alleged open meeting violation at the December 2, 2019, meeting. Defense counsel may make limited redactions to protect non-related legal opinions or advice. However, the redacted material must be sufficiently set forth in a privilege log so that opposing counsel can evaluate whether additional pertinent documentation exists and has been withheld, the date of the document, the persons involved, and the topic, or basis, of the privilege.

Defendant's motion for a protective order regarding this information will be denied.

### D.    Award of Expenses

The Court finds that Clarke is entitled to an award of reasonable expenses incurred in bringing the motion to compel, including attorney fees. *See* Fed. R. Civ. P. 37(a)(5)(A). As set forth above, the Court is granting Clarke's motion to compel on all issues and is denying Defendants' motion for a protective order. Further, none of the exceptions to an award of expenses is present here: First, the record establishes that Clarke engaged in good faith efforts to obtain the discovery from Defendants without the involvement of the Court. Second, as indicated above, the Court does not find Defendants' failure to disclose the requested discovery to be substantially justified. Defendants' conduct of providing shifting

reasons for failing to disclose the IPSC complaint is just one example of how Defendants have acted unreasonably, increased expenses, and delayed discovery in this case. Third, the Court does not find that there are any other circumstances that make an award of expenses unjust. *Id.* at 37(a)(5)(A)(i-iii). Accordingly, the Court will direct Plaintiff to file a motion in support of an award of expenses incurred in making the motion to compel, including attorney fees.

## ORDER

**IT IS ORDERED that:**

1.      Plaintiffs Motion to Compel (Dkt. 18) is **GRANTED**.

2.      Defendants shall, within 30 days of the date this Order is entered:

    a.  Provide all discovery responsive to Plaintiff's Request for Production No. 20, including emails from January 2018 to the present. Defendants may use the previously specified search terms to limit the scope of responsive emails, but only as to those emails for the period *prior to* December 2019.

    b.  Provide all discovery responsive to Plaintiff's Request for Production No. 23, including a copy of the IPSC complaint and any correspondence between Defendants and the IPSC in relation to that complaint.

c.  Provide all discovery responsive to Plaintiff's Request for

Production No. 27, including all communications and documents,

such as emails, notes, legal opinions or advice, bills for associated

legal fees, text messages, and any other documentation or

communications, that occurred or were generated or made during

the period of December 2, 2019, to February 12, 2020, discussing,

referring to, or otherwise relating to an alleged open meeting

violation at the December 2, 2019, meeting.

i.  Defense counsel may make limited redactions to protect non-

related legal opinions or advice.

ii.  The redacted material must be sufficiently set forth in a

privilege log so that opposing counsel can evaluate whether

additional pertinent documentation exists and has been

withheld, the date of the document, the persons involved, and

the topic, or basis, of the privilege.

3.  Defendants' Motion for Protective Order (Dkt. 17) is **DENIED**.

4.  Plaintiff is granted leave to file a motion regarding spoliation in

relation to the IPSC complaint.

5.  Plaintiff is entitled to an award of reasonable expenses incurred in

bringing the motion to compel. Plaintiff may file a motion in support of an award of reasonable expenses within 30 days of the date this order is entered.

DATED: January 31, 2022

B. Lynn Winmill
U.S. District Court Judge